IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RONALD DOYLE,                                             Civ. No. 1:16-cv-01376-MC

                    Plaintiff,                            **OPINION & ORDER**

            v.

CITY OF MEDFORD; PAUL
MELLGREN; PATRICK DENNIS

                    Defendants.
_____

McSHANE, District Judge.

        This matter comes before the Court on Defendants' Motion for Summary Judgment.

ECF No. 16.  The Court heard oral argument on July 28, 2017.  ECF No. 29.  For the reasons

discussed below, Defendants' motion is GRANTED.

# BACKGROUND

Defendant City of Medford is an Oregon municipality.[1]  Defendants Paul Mellgren

("Mellgren") and Patrick Dennis ("Dennis") are police officers employed by the Medford Police

Department.

## I.     The Initial Stop

At approximately 11:00 p.m. on December 5, 2014, Plaintiff Ronald Doyle left a bar in

downtown Medford.  Burrows Decl. Ex. 12, at 2; Ex. 24, at 2.  Officer Paul Mellgren observed

Doyle making an improper turn while leaving the bar's parking lot and initiated a traffic stop.

Burrows Decl. Ex. 12, at 2; Ex. 24, at 5.  When Mellgren approached Doyle's vehicle, he

detected a strong odor of alcohol.  Mitton Decl. Ex. 2, at 6.  Mellgren also observed that Doyle

had watery, bloodshot eyes.  Burrows Decl. Ex. 17; Ex. 24, at 13.  During the encounter,

Mellgren observed that Doyle spoke with a slight slur.[2]  Mitton Decl. Ex. 2, at 6.  Doyle denied

having consumed any alcohol.  Burrows Decl. Ex. 24, at 13.  Mellgren asked Doyle to perform

Field Sobriety Tests ("FSTs"), but Doyle declined.  Burrows Decl. Ex. 12, at 2-3; Ex. 24, at 29.

At this point, Mellgren believed that Doyle was impaired by alcohol.  Mitton Decl. Ex. 2, at 4.

Mellgren did not suspect that Doyle was under the influence of drugs during the initial

encounter.  Mitton Decl. Ex. 2, at 4.

During the encounter, Doyle stated repeatedly that he was the retired city attorney for

Medford.  Burrows Decl. Ex. 12, at 2-3.  Doyle told Mellgren that he believed the stop was

unlawful and that Mellgren was proceeding inappropriately with the investigation.  Burrows

Decl. Ex. 24, at 14.

---

[1] Plaintiff Ronald Doyle is the former Medford city attorney.  He retired from city service in 2005.  Burrows Decl. Ex. 7, at 36-37.
[2] At the subsequent DMV hearing, Mellgren acknowledged that what he had believed to be a slur seemed to be Doyle's normal speech patterns.  Burrows Decl. Ex. 7, at 10.  At the time of the stop, however, Mellgren believed that Doyle was slurring his speech.  Burrows Decl.  Ex. 7, at 10-11; Ex. 24, at 13-14.

Mellgren placed Doyle under arrest for Driving Under the Influence of Intoxicants ("DUII") and ordered Doyle to get out of the vehicle. Doyle argued with Mellgren for some time about the lawfulness of the stop and Mellgren had to repeat that Doyle was under arrest several times. Burrows Decl. Ex. 12, at 3; Ex. 24, at 43-44. Doyle continued to refuse to get out of his vehicle, despite Mellgren's repeated orders. Burrows Decl. Ex. 12, at 3. Before finally exiting the vehicle, Doyle spent some time rummaging for his jacket. Doyle disregarded Mellgren's repeated orders to leave the jacket behind and did not exit the vehicle until he had the jacket in hand. Burrows Decl. Ex. 24, at 18-19. Mellgren observed Doyle moved slowly while exiting the vehicle. Burrows Decl. Ex. 24, at 67. Mellgren has consistently testified that, at this point in the encounter, he believed that Doyle was impaired by alcohol. *See, e.g.*, Burrows Decl. Ex. 24, at 20, 41.

Mellgren placed Doyle in handcuffs and called for the assistance of a second officer to transport Doyle.[3] After he was placed in handcuffs, Doyle said that he didn't want to go to jail and asked if there was anything he could do for Mellgren to "make this right." Mellgren Decl. Ex. 1, ECF No. 19 (dashboard-mounted audio and video or "MAV") 23:09:05.

A short while later, MPD Officer James Barringer arrived and placed Doyle into his patrol car for transport to the Moore Center (for the sake of clarity, the Court will follow the practice of the parties and refer to the Moore Center as "Detox"). Burrows Decl. Ex. 12, at 3. Barringer also observed that Doyle smelled strongly of alcohol. Mitton Decl. Ex. 5, at 2; Burrows Decl. Ex. 26, at 3.

---

[3] Mellgren was driving a K-9 vehicle on the night in question and was unable to transport Doyle because he had a police dog in the patrol car. Burrows Decl. Ex. 26, at 2.

## II.    Detox and the Application for the Search Warrant

At Detox, Doyle agreed to provide a breath sample for the Intoxilyzer 8000.  Mitton Decl. Ex. 2, at 7-8.  His first sample returned blood alcohol content ("BAC") of 0.017 and his second sample returned a result of 0.015.  Mitton Decl. Ex. 2, at 8; Burrows Decl. Ex. 12, at 11.

A low BAC result will not automatically end a DUII investigation.[4]  Mitton Decl. Ex. 4, at 11-12.  Nor does a low BAC result necessarily rule out alcohol intoxication.  Mitton Decl. Ex. 4, at 14 (describing the additive effects of alcohol and other substances).  In a typical DUII investigation, if a person is arrested for DUII based on probable cause and his or her breath sample shows a BAC of less than 0.08, a Drug Recognition Expert ("DRE") will be called to perform an evaluation of the individual.  Mitton Decl. Ex. 3, at 2; Ex. 4, at 11-12.  The DRE attempts to assess whether the individual is actually impaired and, if so, whether he or she is impaired by something other than alcohol.  Mitton Decl. Ex. 3, at 2.  If the individual refuses to submit to a DRE evaluation, or no DRE is available, the police will apply for a search warrant for a urine sample.  Mitton Decl. Ex. 4, at 12-13.  Urine testing is requested only if the police suspect that the individual is impaired by something other than alcohol, or by the interaction of alcohol and another substance.  Mitton Decl. Ex. 4, at 13-14.  Certain drugs will be detected only by special testing, and will not be detected by the general urinalysis screening performed by the Oregon State Police lab.  Mitton Decl. Ex. 4, at 13-14; Ex. 9.

In Doyle's case, Mellgren testified that he was unable to reconcile his observations at the roadside with the low BAC result.[5]   Burrows Decl. Ex. 24, at 42, 80.  Mellgren called his

---

[4] Dennis testified that, while it would unlikely that a person would be intoxicated by alcohol with a BAC of 0.01, "just because somebody blows a .01 percent does not mean they are not impaired.  And what I mean by that is there are other substances that can mimic alcohol."  Burrows Decl. Ex. 25, at 12-13.

[5] Although it appears that Officer Barringer's involvement with the case ended with his delivery of Doyle to Detox, Barringer also expressed surprise at Doyle's low BAC.  Mitton Decl. Ex. 5, at 3.  Barringer opined that he would have expected a BAC of between 0.08 and 0.12 based on the intensity of the odor of alcohol.  Mitton Decl. Ex. 5, at 3.

supervising police sergeant and informed him that Doyle's breath sample was below 0.08 and that the result was inconsistent with Mellgren's roadside observations. Mitton Decl. Ex. 2, at 9. Mellgren requested the assistance of a DRE. Mitton Decl. Ex. 2, at 9. The sergeant instructed Mellgren to call the DRE directly and to proceed with the investigation. Mitton Decl. Ex. 2, at 9. Mellgren contacted the on-duty DRE, who instructed Mellgren to ask Doyle if he would submit to a DRE examination and/or provide a urine sample. Burrows Decl. Ex. 7, at 16; Ex. 12, at 3. Doyle declined both requests. Mitton Decl. Ex. 1, at 9; Ex. 2, at 10.

During his time at Detox, Doyle demanded that Mellgren call the chief of police, who Doyle believed would vouch for his character. Mitton Decl. Ex. 1, at 6-7, 12; Burrows Decl. Ex. 12, at 3. Doyle testified that he believed that the chief of police would personally intervene and mediate some sort of resolution to Doyle's detention. Mitton Decl. Ex. 1, at 7, 12. Doyle also discussed calling Mellgren's father, another former employee of the City of Medford, but opted against doing so. Mitton Decl. Ex. 1, at 6; Burrows Decl. Ex. 12, at 3.

Officer Patrick Dennis was at Detox on an unrelated call. Mitton Decl. Ex. 2, at 2. During his time at Detox, Dennis observed that, while Doyle was not aggressive, he was argumentative, "erratic," and "just had bizarre behavior." Burrows Decl. Ex. 25, at 9-10, 14-15. Dennis is qualified as a DRE and Mellgren spoke to him about his investigation of Doyle. Mitton Decl. Ex. 2, at 2; Ex. 3, at 4. Mellgren described his roadside observations to Dennis and noted the low BAC result. Mitton Decl. Ex. 2, at 2. Mellgren expressed the view that "everything at that point just didn't make sense. It wasn't adding up." Mitton Decl. Ex. 2, at 2. Dennis spoke with Doyle, although he did not perform a DRE examination, nor did he explicitly express an opinion as to whether or not Doyle was under the influence of drugs. Mitton Decl. Ex. 2, at 2; Ex. 3, at 5-7. Dennis advised Mellgren of the existence of categories of fast-

dissipating drugs, such as inhalants, which might explain a sudden change in observable levels of impairment, as well as a low BAC. Mitton Decl. Ex. 3, at 8; Burrows Decl. Ex. 25, at 17. Based on the information Mellgren received from Dennis, Mellgren came to believe that Doyle had been under the influence of drugs. Mitton Decl. Ex. 2, at 3-4, 12; Burrows Decl. Ex. 24, at 37, 41. Mellgren asked Dennis if he should seek a search warrant and Dennis replied "Absolutely." Mitton Decl. Ex. 3, at 5, 10.

Mellgren prepared a search warrant affidavit, which he submitted telephonically to a Jackson County Circuit Court judge. Mitton Decl. Ex. 2, at 10. In his application, Mellgren described the smell of alcohol on Doyle's breath, his watery, bloodshot eyes, slurred speech, and slow movements, as well as Doyle's low BAC result and refusal to perform FSTs or submit to a DRE examination. Mitton Decl. Ex. 7, at 4. Mellgren raised the possibility of fast-dissipating controlled substances or inhalants and stated that he had probable cause to believe that evidence of controlled substances or inhalant use would be found in Doyle's urine. Mitton Decl. Ex. 2, at 13; Ex. 7, at 4. Mellgren requested that the judge issue a search warrant for the collection of urine, on the basis that Mellgren had probable cause to believe that it would reveal evidence of the crime of DUII. Mitton Decl. Ex. 7, at 4-5. The judge found that probable cause did exist and issued a warrant for the collection of the urine sample. Mitton Decl. Ex. 6; Ex. 7, at 5-6.

When presented with the search warrant, Doyle initially refused to provide a urine sample. Mitton Decl. Ex. 1, at 11; Ex. 2, at 14. Mellgren and Dennis transported Doyle to the hospital so that the urine sample could be collected by catheter. Mitton Decl. Ex. 1, at 13-14; Ex. 2, at 14. Doyle ultimately agreed to provide the urine sample and no catheter was necessary. Mitton Decl. Ex. 1, at 15; Ex. 2, at 14. Mellgren then issued citations for misdemeanor DUII,

refusing to provide a urine sample, and improper right turn. Burrows Decl. Ex. 1-3. Doyle was lodged at the jail and released the following morning. Burrows Decl. Ex. 12, at 1.

Doyle's urine sample was tested by the Oregon State Police laboratory and yielded a positive result for marijuana metabolites. Mitton Decl. Ex. 2, at 16; Ex. 9. Doyle's case was submitted to the Jackson County District Attorney's Office, which declined to proceed with charges. Burrows Decl. Ex. 4.

### III.    The DMV Hearing

Doyle's driver's license was suspended by the DMV based on Doyle's refusal to provide a urine sample. Doyle challenged the suspension and a hearing was held before an administrative law judge ("ALJ") on December 24, 2014. Burrows Decl. Ex. 5.

Mellgren appeared at the administrative hearing and testified without the assistance of counsel. Mitton Decl. Ex. 2, at 17. Mellgren testified that when he arrested Doyle, he believed Doyle to be under the influence of alcohol, rather than drugs, and that this belief persisted for at least some of the time Doyle was at Detox. Mitton Decl. Ex. 10, at 4. Mellgren also testified that, at the time he initially asked Doyle to provide a urine sample or submit to a DRE exam, he did not believe Doyle was under the influence of a controlled substance or inhalant.[6] Mitton Decl. Ex. 10, at 2-3; Burrows Decl. Ex. 7, at 29. Mellgren stated that once Doyle's breath sample showed a low BAC, he had no choice but to continue with the investigation because he was unable to reconcile his roadside observation of impairment with the low BAC result. Mitton Decl. Ex. 10, at 3; Burrows Decl. Ex. 7, at 18-19.

---

[6] Although Doyle attaches considerable significance to this statement, the issue in this case is not whether Mellgren believed Doyle to be under the influence of a controlled substance at the time he initially requested the urine sample. The issue is whether he believed that Doyle was impaired when he was driving. Mellgren has consistently testified that he believed Doyle was impaired at the time of the stop. Dissipation of symptoms does not compel dissipation of probable cause.

The ALJ determined that Mellgren lacked probable cause to arrest Doyle and reversed the suspension of Doyle's driver's license.[7]  Burrows Decl. Ex. 8, at 3-4.

## LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id.*  "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citations omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the non-moving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004).  A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not sufficient to preclude the grant of summary judgment.  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).  When the non-moving

---

[7] Doyle has requested that the Court take judicial notice of the ALJ's determinations.  The opinions of DMV ALJs do not exercise a preclusive effect with respect to questions of probable cause.  *McKay v. Morris*, No CV-08-1224-ST, 2010 WL 2773319, at *8-9 (D. Or. May 25, 2010).  While the Court has carefully studied the record of the DMV proceeding and the ALJ's opinion, it will reach its own conclusions with regard to probable cause.

party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary[.]" *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (quotation marks and citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

Doyle brings claims against Mellgren and Dennis for false arrest and false statements to a judicial officer, along with state law claims for assault, battery, and false imprisonment. Doyle has also brought *Monell* claims against the City of Medford based on number of its policies, which Doyle asserts are unlawful. Defendants have moved for summary judgment.

Doyle also initially brought claims against Mellgren and Dennis for excessive use of force, based on the use of handcuffs, as well as a *Monell* claim against the City of Medford for its handcuff policies. Doyle has conceded these claims and moves to dismiss them in his Response. The Court accepts Doyle's concession and all claims related to excessive force or the City of Medford's handcuff policy are dismissed.

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

# I.    False Arrest

Doyle contends that Mellgren lacked probable cause to arrest him at the time of the stop. Doyle further contends that any probable cause dissipated when the Intoxilyzer revealed a low BAC.

A claim for unlawful arrest is cognizable under the Fourth Amendment, "provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (internal quotation marks and citation omitted). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Id.* "It is well-settled that the determination of probable cause is based upon the totality of the circumstances known to the officers at the time[.]" *Id.*

"Probable cause exists when police have knowledge at the moment of arrest of facts and circumstances based on reasonably trustworthy information that would warrant a belief by a reasonably prudent person that the person arrested committed a criminal offense." *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002). The evidence need support only a probability and not a prima facie showing of criminal activity, and such evidence need not be admissible, but only legally sufficient and reliable. *Id.* "Mere suspicion, common rumor, or even strong reason to suspect are not enough, however." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984). "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). In determining whether probable cause exists for arrest, courts look to "the collective knowledge of all officers involved in the criminal investigation." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 (9th Cir. 2008).

When the facts underlying the arresting officer's probable cause determination are undisputed, whether probable cause existed for an arrest is "an essentially legal question" that should be determined by the court at the earliest possible point in § 1983 false arrest litigation. *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003) ("[W]here the material historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for the court to decide whether probable cause existed[.]").

**A. Initial Arrest**

Doyle contends that Mellgren lacked probable cause for the initial arrest. "A person is under the influence of an intoxicating liquor, controlled substance, or inhalant when the person's physical or mental faculties are adversely affected to a noticeable or perceptible degree." *State v. Miller*, 265 Or. App. 442, 445 (2014). Courts in this District have observed that the "threshold for probable cause to believe that an individual has been driving under the influence is relatively low in Oregon." *Gage v. City of Baker City*, Civil No. 09-6107-AA, 2010 WL 954222, at *2 (D. Or. Mar. 11, 2010), *aff'd* 432 F. App'x 664 (9th Cir 2011). In *State v. Gilmour*, 136 Or. App. 294 (1995), the Oregon Court of Appeals held that probable cause existed when the defendant committed a traffic infraction after leaving a tavern parking lot at 2:00 a.m., and, during the stop that followed, the officer observed bloodshot, watery eyes, and smelled the strong odor of alcohol emanating from the vehicle. *Id.* at 298-300. The Oregon Administrative Rules provide a non-exhaustive list of "acts, signs or symptoms," of intoxicant impairment in DUII cases, including difficulty following directions; odor of alcoholic beverage on breath; speech difficulties or unusual speech patterns; disorderly or unusual conduct or demeanor; difficulty with divided attention; and bloodshot, watery, or glassy eyes. OAR 257-025-0010. "The fact

that there were other possible, lawful explanations for a person's behavior, such as frustration, does not preclude the conclusion that there was probable cause." *Miller*, 265 Or. App. at 447. Even if the individual offers plausible explanations for his behavior, "an officer is not required to eliminate alternative explanations to indicia of intoxication before concluding that there is probable cause to arrest." *Id.* (internal quotation marks and citation omitted).

In this case, Mellgren saw Doyle leave a tavern parking lot late at night and saw him commit a traffic violation. Mellgren observed the strong odor of alcohol coming from Doyle, as well as Doyle's bloodshot and watery eyes, slow movements, and what Mellgren believed at the time to be slurred speech. Consistent with *Gilmour*, this is sufficient to sustain a finding of probable cause.

The Court takes particular note of the dashcam video from Mellgren's police cruiser. Mellgren Decl. Ex. 1 ("MAV"). A court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Doyle does not dispute the authenticity of the MAV or its contents.

The video is consistent with Mellgren's testimony about Doyle's roadside behaviors. In the video, Mellgren articulates some of his observations supporting probable cause to Doyle: "You have bloodshot, watery eyes, I can smell an odor of an alcoholic beverage coming out of the vehicle and you're the only occupant, okay. You're coming from a bar right now." MAV 23:03:34-23:03:50. It shows Doyle's repeated statement that he is the former Medford city attorney. *See, e.g.*, MAV 23:00:22 (offered in response to a question about Doyle's current address), 23:08:57 (offered in response to a question about friends or family members who might be available to drive Doyle in the event of a cite-and-release). It shows Doyle's refusal to follow

repeated directions to step out of the car, MAV 23:05:00-23:07:00, to place his keys on the dashboard and not to start the car, MAV 23:06:04-23:06:40, and to stop searching the vehicle for his coat. MAV 23:06:39-23:07:05. It reveals the odd speech patterns, which Mellgren believed to be a slur, *see, e.g.*, MAV 23:09:05, and what Mellgren interpreted as slow movements, MAV 23:07:07, both of which were later noted in Mellgren's search warrant affidavit. And finally, it shows Doyle's improper request that Mellgren "Tell me what I can do to make this right with you." MAV 23:09:05.

The Court concludes that these facts meet the "relatively low" threshold for probable cause in Oregon DUII cases. Under the totality of the circumstances, Mellgren had probable cause to arrest Doyle for DUII.

### B. Continuing Probable Cause

A person must be released from arrest if the previously established probable cause has dissipated. *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007). "'As a corollary . . . of the rule that police may rely on the totality of the facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Id.* (quoting *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005)).

This is not a case where the officers ignored facts tending to dissipate probable cause. Mellgren and Dennis did not ignore the fact that Doyle's BAC was well below the presumptive level for impairment. Rather they accounted for it in the evolving course of the investigation.

Contrary to Doyle's assertion, dissipation of symptoms is not the same as dissipation of probable cause, nor does a low BAC end a DUII investigation. An individual may be impaired by something other than alcohol, or by substances acting in combination with alcohol:

> (1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

> (a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;
> (b) Is under the influence of intoxicating liquor, cannabis, a controlled substance or an inhalant; or
> (c) Is under the influence of any combination of intoxicating liquor, cannabis, a controlled substance and an inhalant.

ORS 813.010(1); *see also* Mitton Decl. Ex. 4, at 14 (Sgt. Lane testified that a low BAC does not necessarily rule out alcohol acting as an additive with another substance to produce intoxication).

While Doyle's low BAC may have ruled out a violation of ORS 813.010(1)(a), it did not eliminate the possibility that Doyle had violated ORS 813.010(1)(b) or (c). *See Burgett v. Sanborn*, No. 6:13-CV-1358-TC, 2015 WL 4644619, at *5 (D. Or. May 14, 2015) ("Probable cause is determined at the time of arrest and the fact that [the plaintiff's BAC of] .04% is below the level where impairment is *presumed* does not negate the probable cause for the arrest. Nor does an arrest without successful prosecution.").

Mellgren testified that he could not reconcile the low BAC result with the symptoms of impairment he had observed roadside. He was not presented with exculpatory information, such a medical explanation for Doyle's roadside behavior. Such information might have resulted in the dissipation of probable cause. Absent such an explanation, however, Mellgren had probable cause to continue investigating the cause of Doyle's roadside impairment. Dennis, a qualified DRE, advised Mellgren of the existence of fast-dissipating substances that could explain both the Mellgren's roadside observations and the low BAC. Dennis advised Mellgren to proceed with a search warrant.

Based on this record, the Court concludes that, under the totality of the circumstances, Defendants had probable cause to continue Doyle's arrest, notwithstanding Doyle's low BAC result.

## II.     False Statement to a Judicial Officer

Doyle alleges that Mellgren made false statements in his affidavit and testimony in support of the search warrant. Specifically, Doyle contends that Mellgren misled the judge as to the existence of probable cause by attesting that evidence of drugs or inhalants would be found in Doyle's urine. In order to sustain a claim that police procured a warrant through deception, the plaintiff must show "that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (internal quotation marks and citation omitted). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Id.* at 1224. "Nor may a claim of judicial deception be based on an officer's erroneous assumptions about the evidence he has received." *Id.*

In this case, there is no evidence of to indicate the deliberate or reckless presentation of false information in the search warrant affidavit. Mellgren described his roadside observation of impairment and informed the judge of the information Mellgren had received from Dennis about fast-dissipating substances. Mellgren told the judge that he believed evidence of such substances would be found in Doyle's urine. The fact that no such evidence was ultimately found cannot sustain a claim for judicial deception. At most, it could be said that Mellgren omitted the fact that Dennis was the source of his information about fast-dissipating substances, but the Court cannot conclude that such an omission was material.

As Mellgren made no false representations of any kind or any material omissions, Defendants' motion for summary judgment is GRANTED as to this claim.

### III.    Qualified Immunity

The individual officer defendants assert that they are entitled to qualified immunity.[8]   A defendant is entitled to qualified immunity if his or her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald¸* 457 U.S. 800, 818 (1982).   The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   The right must have been clearly established at the time of the defendant's alleged misconduct, so that a reasonable official would have understood that, under the circumstance, what he or she was doing violated that right.   *Wilson v. Layne,* 526 U.S. 603, 615 (1999).   Courts have discretion in deciding which prong to address first, depending on the circumstances of the case.   *Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009).

The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality."   *Mullenix v. Luna*, ___U.S.___, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted).   "The dispositive question is whether the violative nature of particular conduct is clearly established.   This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."   *Id.*

Even if a right is clearly established, qualified immunity protects an official from reasonable mistakes about the legality of his actions.   *Wilkins v. City of Oakland*, 350 F.3d 949, 954-55 (9th Cir. 2003).   The official is still entitled to qualified immunity if the official "could have believed, 'reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right.'"   *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir.

---

[8] Qualified immunity does not shield municipalities from liability.   *Owen v. City of Independence*, 445 U.S. 622, 657 (1980).   Accordingly, Doyle's claims against the City of Medford are dealt with below.

2006) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation marks and citation omitted). Qualified immunity is meant to protect "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks and citation omitted).

In this case, the Court has already concluded that Mellgren had probable cause to arrest Doyle for DUII. The Court has also concluded that probable cause continued following the arrest and that Mellgren did not make any false statements or material omissions in his search warrant affidavit. To the extent that Dennis was involved in Doyle's arrest and continuing detention, his actions were also supported by probable cause based on the information conveyed to him by Mellgren. Even if Mellgren's belief that probable cause existed was in error, that belief was reasonable under the circumstances. Furthermore, it was not "clearly established" that a low BAC will destroy probable cause and necessitate the release of an individual suspected of DUII.

Accordingly, the Court concludes that the individual officer defendants are entitled to the protection of qualified immunity.

## IV. *Monell* Claims

Municipal liability for an alleged constitutional violation by an employee is allowed only "when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)), *amended*, 776 F.3d 1020 (9th Cir. 2015). If relying on the "final policymaker" prong of liability, the final

policymaker must have actually committed the alleged constitutional violation, or must have either delegated that final policymaking authority to, or ratified the decision of, a subordinate. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002).

"In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks, citation, and alterations omitted); *Cairns v. Cnty. of El Dorado*, ___F. App'x___, No. 16-15102, 2017 WL 3049577, at *2 (9th Cir. July 19, 2017).

In this case, the specific polices challenged by Doyle represent a moving target. In the First Amended Complaint, Doyle challenges the following seven polices:

1. The City has trained officers to handcuff citizens for unreasonable periods of time and in awkward positions, despite the citizen having physical conditions that make prolonged and awkward handcuffing dangerous to the citizen's health and well-being.

2. Defendant City of Medford mandates arrests in DUII investigations after a stop and without probable cause.

3. Defendant City of Medford has a policy allowing officers to seek a search warrant for a urine sample without probable cause.

4. Defendant City of Medford has a policy, custom, or practice which requires arresting officers in DUII arrests to maintain custody of a suspect even after that officer has determined there is no probable cause to detain further.

5. The City of Medford has a policy, custom, or practice which allows officers to falsely arrest when there is no probable cause.

6. The City of Medford has a policy, custom, or practice which allows officers to falsely testify to judges in order to obtain search warrants.

7. The City of Medford has a policy, custom, or practice which does not allow non-DRE trained officers to release a suspect and stop an investigation when there is no probable cause to arrest or detain.

First. Am. Compl. 16-17.

In his Response to Defendants' Motion for Summary Judgment, ECF No. 24, Doyle concedes his claims as to the alleged policy regarding handcuffing and appears to abandon the remaining six policies in favor of "merging" them into four different, "more efficient," alleged policies:

1. Defendant City of Medford has written and unwritten policies governing DUII arrests permitting arrest, detention, and incarceration when there is no probable cause to believe the arrested person has consumed alcohol or drugs.

2. Defendant City of Medford has written and unwritten policies that even though probable cause may have dissipated in a DUII arrest, the arresting officer is required to detain the suspect, seek urine tests, and proceed with the investigation.

3. Defendant City of Medford has written and unwritten policies which mandate search warrants for urine when Intoxilyzer tests indicate no probable cause to investigate.

4. Defendant Mellgren's arrest and detention of Mr. Doyle was ratified by superior officers which created a policy of arrest without probable cause [and] continued detention without probable cause or after probable cause dissipated.

Resp. to Mot. Summ. J. 67-68.

As a preliminary matter, Doyle's restatement of his *Monell* claim represents an implicit attempt to amend the complaint. Such an implicit motion is inappropriate on a number of grounds. First, this District's Local Rules require that each motion be separately stated and motions "may not be combined with any response, reply, or other pleading." LR 7-1(b). The combination of the attempted amendment and the Response is therefore inappropriate. Second, the Federal Rules of Civil Procedure clearly set forth how and when a party may amend its pleadings. Fed. R. Civ. P. 15(a). When, as here, the time for amending as a matter of course

has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court has not given Doyle leave to amend the complaint, nor is there any indication that Defendants have consented to an amendment. On the contrary, Defendants' Reply indicates their opposition to this late amendment on the very reasonable ground that it is presented after both the close of discovery and the filing of dispositive motions. These issues supply independent grounds for rejecting Doyle's attempted amendment of the complaint.

Furthermore, even if the Court were inclined to address the restated policies on the merits, it would still find that summary judgment was warranted. "[M]unicipalities cannot be held liable when the individual police officer has inflicted no constitutional injury." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1015 (9th Cir. 2015). When the § 1983 claims against the individual officers fail, the "municipal liability claim also necessarily fails." *Id.* In this case, the Court has already determined that Defendants are entitled to summary judgment on the claims against the individual officers. The *Monell* claims against the City of Medford based on the officers' conduct must also fail, no matter which formulation of the policies the Court examines.

Even considered individually, Defendants are entitled to summary judgment on each of the alleged policies. For the allegation that the City of Medford has a policy permitting DUII arrests without probable cause to believe the person has consumed drugs or alcohol, there is no evidence that such a policy exists. To the extent that there might be such a policy, the Court has determined that the officers had probable cause to believe that Doyle had consumed alcohol and/or drugs and so the policy could not have been the moving force behind Doyle's injury.

As to the second alleged policy, which requires officers to detain suspects and seek urine samples despite dissipation of probable cause, there is no evidence of such a policy. The

evidence in the record suggests a policy of continuing DUII investigations when the suspect's BAC is inconsistent with the level of observed impairment, but, as previously discussed, a low BAC will not necessarily result in dissipation of probable cause. Furthermore, the Court has found that the officers had probable cause to continue detaining Doyle and so, to the extent that any such policy exists, it was not the moving force behind Doyle's alleged injury.

The third alleged policy would require officers to seek search warrants for urine when the Intoxilyzer results indicate no probable cause for further investigation. As Defendants point out, this policy is not internally consistent. The only time an Intoxilyzer result, standing alone, would dispose of the need for further investigation is if the BAC was 0.08 or greater. Such a result would indicate a violation of ORS 813.010(1)(a) and no further inquiry into the cause of the suspected impairment would be necessary. If, as in this case, an officer observes signs of impairment and the individual's BAC result is low, that indicates that there *is* a need for further investigation into the cause of the suspected impairment. Furthermore, there is no evidence of such a policy and, if it did exist, it was not the moving force behind Doyle's alleged injury.

As to the final policy, ratification, there is no evidence that a person with final policymaking authority approved the officers' conduct or adopted it as official policy. *See Zelaya v. Cnty. of Los Angeles*, 628 F. App'x 535, 536 (9th Cir. 2016) (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010)).

Defendants' motion for summary judgment is GRANTED as to Doyle's *Monell* claims against the City of Medford.

## V.    State Law Claims

Doyle brings state law claims for false imprisonment and assault and battery. Doyle's claim for false imprisonment is based on the alleged lack of probable cause for the initial arrest

and the supposed dissipation of probable cause after the low BAC result. Doyle's assault and battery claim is based on his having been handcuffed after his arrest. Mitton Decl. Ex. 1, at 16. Courts in this District have concluded that state law claims for false imprisonment, assault, and battery based upon an allegedly false arrest will fail if there was probable cause to support the initial arrest. *Gainer v. City of Troutdale*, Case No. 3:14-cv-01346-SI, 2016 WL 107957, at *9-10 (D. Or. Jan. 8, 2016); *see also Gigler v. City of Klamath Falls*, 21 Or. App. 753, 762 (1975) ("Indispensable proof" of claims for assault, battery, and false imprisonment against police officer "is that the action taken against him was without probable cause."). Under Oregon law, an officer must have a subjective belief that a crime has been committed and that belief must be objectively reasonable under the circumstances. *Gilmour*, 136 Or. App. at 298.

In this case, Mellgren had a subjective belief that Doyle had committed a DUII at the time of the initial arrest based Doyle's watery, bloodshot eyes, slow movement, apparently slurred speech, the smell of alcohol, and the fact that Doyle was seen leaving a tavern late at night. As previously discussed, that belief was objectively reasonable under the circumstances. Once Mellgren ruled out alcohol as the sole cause of Doyle's impairment, he had a subjective belief that Doyle's impairment had been caused by a controlled substance or a combination of controlled substances and alcohol based on the information Mellgren received from Dennis. This belief was objectively reasonable in light of Mellgren's roadside observations and the low BAC result.

Accordingly, the Court concludes that the officers had probable cause for both Doyle's initial arrest and his continued detention. As Doyle's arrest and continued detention were supported by probable cause, Doyle's state law claims must necessarily fail. Defendants' Motion for Summary Judgment is GRANTED.

**CONCLUSION**

The Court accepts Plaintiff's concession and DISMISSES Plaintiff's claims related to the alleged excessive use of force.  Defendants' Motion for Summary Judgment, ECF No. 16, is GRANTED as to all other claims.   The trial and pretrial conference dates are VACATED and final judgment shall be entered.

It is so ORDERED and DATED this ___31st_____ day of August, 2017


/s Michael J. McShane
_____
Hon. Michael McShane
United States District Judge